JUDGE CASTEL

LAW OFFICES OF GEORGE N. PROIOS, PLLC
Attorneys for Plaintiff
65 West 36th Street, 7th Floor
New York, NY 10018-7702

'09 CIV 8378



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

Florens Container Inc.,

        Plaintiff,

    v.

Meridian Shipping Lines Pvt. LTD.
d/b/a M/S Meridian Logistics

        Defendant.

———————————————————————

**ECF Case**

**09 CV**

**VERIFIED COMPLAINT
WITH REQUEST FOR
ISSUE OF WRITS OF
MARITIME
ATTACHMENT AND
GARNISHMENT**

Plaintiff Florens Container, Inc., as itself and as Florens Management Services (Macao

Commercial Offshore) Limited, complains of the Defendant Meridian Shipping Lines, Pvt. LTD,

d/b/a M/S Meridian Logistics, and alleges upon information and belief as follows:

    1.     This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure. The Court has subject matter jurisdiction.

    2.     At all material times Florens Container Inc was, and is now, a corporation

organized and existing under the laws of Delaware. Florens Management Services (Macao

Commercial Offshore) was, and is now, a business entity organized and existing under the laws

of Macao.

3.      At all material times Meridian Shipping Lines Pvt. LTD was, and is now, a

company organized and existing under the laws of India.

## THE BASIC FACTS

4.      Plaintiff Florens Container Inc.(hereinafter "Florens") is engaged in the leasing of

marine shipping containers on a world wide basis.

5.      Defendant Meridian Shipping Lines Pvt. LTD (hereinafter "Meridian") leases and

uses in its business marine shipping containers.

6.      On or about April 12, 2006, Meridian, d/b/a M/S Meridian Logistics,

entered into a lease of containers with Florens, effective from 22 March 2006 through 31 March

2009. A copy of the lease is attached hereto as Exhibit A.  On or about September 15, 2006,

Meridian, d/b/a as M/S Meridian Logistics, entered into a lease of containers with Florens d/b/a/

Florens Management Services (Macao Commercial Offshore) LTD, effective from 15 July 2006

through 31 March 2009. A copy of the lease is attached hereto as Exhibit B.  Florens supplied

containers to Meridian under the terms of these leases.

7.      As set forth in paragraph 6, the leases between Florens and Meridian

ended on March 31, 2009 and, under the lease terms, Meridian was obligated to pay all

outstanding invoices and to return the containers to Florens.

8.      Meridian has failed to make timely payments of the amounts due for

the leased containers in the amount of USD 123,284.99 as shown in the aging report attached

hereto as Exhibit C.  Meridian has also failed to return the containers it used to Florens.  The

replacement value of those containers is USD 306,622.00 as shown in the report of missing

containers, dated September 24, 2009, attached hereto as Exhibit D.  The aggregate amount of

unpaid lease charges and replacement value of unreturned containers is USD 429,906.99.

9.    Pursuant to Section 3(b) of Plaintiff's Terms and Conditions,

"Lessee shall pay a late payment charge of two percent (2%) of the past due balance per month,

or such lesser amount as may be permitted by applicable law, on all past due accounts."

10.    Pursuant to Section 4 (b) of Plaintiff's Terms and Conditions, Lessee

is obligated to pay to lessor daily rates of 150% of the per diem daily rates in the lease for all

equipment not returned at the end of the lease.

11.    The total amount due to Florens Container Inc. is at least USD $539,907.00,

including agreed interest, penalties and reasonable counsel fees.

**COUNT I**
**<u>RULE B RELIEF</u>**

12.    Plaintiff repeats paragraphs 1 through 11 as if fully set forth herein.

13.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain

security for its claims including its contractual attorneys' fees and costs. No security for

Plaintiff's claims has been posted by Meridian or anyone acting on its behalf to date.

14.    Defendant cannot be found within this district within the meaning of Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action,

assets in this jurisdiction consisting of cash, funds, freight, hire, and/or credits in the hands of

garnishees in this District, including but not limited to electronic fund transfers and/or CHIPS

credits, because Defendant conducts business internationally in U.S. Dollars, and all electronic

fund transfers are processed by intermediary banks in the United States, primarily in New York.

15.     Plaintiff believes that Defendant's property may be found in this

District is based on the fact that Defendant has previously made payments to Plaintiff in U.S.

dollars, as evidenced by a wire transfers made from Defendant to Plaintiff.

16.     The named garnishee banks participate in the CHIPS system in New York to send

U.S. dollar wire transfers between banks in the United States and throughout the world.

Accordingly, Plaintiff believes that some assets of Defendant in U.S. dollars EFT's will be

transferred through intermediary CHIPS banks, including the named garnishee banks.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against Meridian, citing them to appear and

answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That since Meridian cannot be found within this District pursuant to Rule B, this

Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and

Garnishment pursuant to Rule B attaching all of their tangible or intangible property or any other

funds held by any garnishee, which are due and owing to these defendants up to the amount of at

least USD 539,907 which includes principal ($429,907), interest ($80,000), penalties ($20,000),

and reasonable attorneys' fees ($10,000), to Florens Container Inc. to secure the Plaintiff's claim,

and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B,

answer the matters alleged in the Verified Complaint;

C.     That since it appears that the U.S. Marshal's Service lacks sufficient

staff to effect service of process of Maritime Attachment and Garnishment promptly or

economically, and that since appointing a person over 18 years of age and who is not a party to

this action will result in substantial economies in time and expense, such a person be appointed

pursuant to Fed.R.Civ.P. 4(c) to serve process of Maritime Attachment and Garnishment in this action.

      D.    That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

      E.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
       October 2, 2009

                      Respectfully submitted,
                      LAW OFFICES OF GEORGE N. PROIOS, PLLC
                      Attorneys for Plaintiff

            By  _____
                  George N. Proios (GP-9331)
                  65 West 36th Street , 7th Floor
                  New York, NY 10018-7702
                  212-279-8880

OF COUNSEL:
J. Stephen Simms
John T. Ward
Simms Showers LLP
20 S. Charles Street - Suite 702
Baltimore, Maryland 21201
410-783-5795



# FLORENS CONTAINER INC.

## (INCORPORATED IN THE UNITED STATES)

### FLORENS CONTAINER INC.
### EQUIPMENT AGREEMENT NO. LE-MERIDIAN-01
### EFFECTIVE DATE 22 MARCH 2006

**Lessor:**
Florens Container Inc.
303 Second St., Suite 355 South
San Francisco, CA 94107-1328
USA

**Lessor's Contact Address:**
Florens Container Services (UK) Ltd.
Kingmaker House
Station House
New Barnet, Herts EN5 1NZ
Telephone Number:    44-20-8370-0700
Fax Number:          44-20-8275-0777

**Lessee:**
M/S Meridian Logistics
5/232H Annai Indhra Nagar 2nd Street
Tuticorin 628002
India

1.  This Lease between Lessor and Lessee shall comprise two parts: i) an Equipment Agreement, and ii) Business Terms and Conditions.

    If Business Terms and Conditions are physically attached to this Equipment Agreement, those Business Terms and Conditions as well as any subsequent revisions or amendments to them, are parts of this Lease.  If no Business Terms and Conditions are physically attached to this Agreement, then the Business Terms and Conditions between Lessor and Lessee of the most recent date of execution are incorporated into this Lease by reference.  Otherwise, Lessor's standard Business Terms and Conditions as of the Effective Date of this Agreement are incorporated into this Lease by reference.

2.  The terms of this Lease shall apply to all twenty-foot (20') dry cargo containers  taken on lease by Lessee on or after the Effective Date of this Lease, except for Leased Equipment which is expressly made subject to another lease between Lessor and Lessee by reference to type, age or other criteria.

3.  In this Lease,

    a)  "Leased Equipment" shall mean any personal property owned or managed by Lessor taken into the possession of Lessee by agreement with Lessor, whether by interchange from Lessor or otherwise.

    b)  A 20-foot (20') container shall equal one "TEU"; a 40-foot (40') container shall equal two "TEU".

Contract No.:   LE-MERIDIAN-01
Issue Date:     3 April 2006

Initials:
Lessee:
Lessor:

Exhibit A



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

4.  This Lease shall be in effect from 22 March 2006 (the "Effective Date") through 31 March 2009. During this period, Lessor may terminate this Lease by sending a written notice to Lessee at least sixty (60) calendar days in advance of the termination date.

5.  **Rental Rates per Unit of Leased Equipment per day; Minimum Lease Period:**

    | Equipment Type | Size | US$ Rate per day |
    |---|---|---|
    | Dry Cargo | 20' | 0.62 |

    Each unit of Leased Equipment shall remain on lease for a minimum period of 1096 days calculated from the onhire date.

6.  **Handling Charges**

    Lessee shall pay a handling charge of US$ 35 on each leaseout and each redelivery of a unit of Leased Equipment.

7.  **Direct Interchange Fee**

    Lessee shall pay a direct interchange fee of US$ 15 for each unit of Leased Equipment given to or received from another party through a direct interchange.

    This provision does not imply consent to any interchange or obligate Lessor to consent to any interchange.

8.  **Return of Leased Equipment; Redelivery Quantities; Drop-off Charges and Credits**

    a) All Leased Equipment must be returned to Lessor's designated depot at a location shown in this Lease and agreed upon by Lessor and Lessee at the time of booking. Lessor reserves the right to close any location to redeliveries. Lessor agrees to give a written notice to Lessee ninety (90) calendar days in advance of the effective date of such closure.

    b) Lessor shall accept for redelivery each month (on a non-cumulative basis) the maximum numbers of units of Leased Equipment of the types shown in the locations listed in the Redelivery Schedule. Drop-off Charges and/or Credits shall be paid by Lessee or credited to Lessee in accordance with that Schedule.

9.  **Off-hire Date; Repairs at Off-Hire**

    a) Each unit of Leased Equipment shall be off-hired on the date it is redelivered to Lessor's designated depot. Lessor or its agent shall inspect all Leased Equipment after redelivery.

    b) If a unit of Leased Equipment is found to be damaged:

Contract No.:   LE-MERIDIAN-01
Issue Date:     3 April 2006

Initials:
Lessee:
Lessor:

# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

(1)     Lessor or its agent shall send Lessee an estimate of the costs for Lessee's account.

(2)     Lessee shall notify Lessor within five (5) working days from the estimate date, of any disagreement with the estimate amount.

If no notice of disagreement is received, Lessee shall be deemed to have agreed to the costs as estimated. Lessor or its agent shall invoice Lessee, and Lessee shall pay, the costs as estimated.

(3)     If a notice of disagreement is received, Lessor shall hold the unit for five (5) working days from the date of the notice so that it may be inspected by Lessee or its agent. Lessee will give the results of its inspection to Lessor within the five (5) working days from the date of the notice.

(4)     If there is still disagreement as to the estimate amount, Lessor and Lessee shall appoint a surveyor to perform a joint survey within two (2) working days of receipt of Lessee's inspection report. The results of the joint survey will be binding. Lessor or its agent shall invoice Lessee, and Lessee shall pay, the costs as determined by the joint survey. Lessor and Lessee shall each pay one-half (½) of the surveyor's fee.

## 10.    Early Redelivery; Early Redelivery Add-on Rental

a) At Lessee's option any unit of Leased Equipment may be redelivered at any time after it has been on hire for 365 days, provided that Lessee has given Lessor a written notice at least thirty (30) days in advance of the redelivery date.

b) Lessee shall pay Add-on Rental on each unit of Leased Equipment redelivered early, from the day the unit was leased out through the day it is off-hired, both days included, in accordance with the following schedule:

**US$ Add-on Rental Rates per Unit of Leased Equipment per day:**

| Equipment Type | Size | Number of Days on Lease 366-730 | 731-1095 |
|---|---|---|---|
| Dry Cargo | 20' | 0.12 | 0.06 |

c) Add-on Rental shall be paid in addition to all other charges and obligations under this Lease.

## 11.    Replacement Values per unit of Leased Equipment

| Equipment Type | Size | US$ Replacement Value |
|---|---|---|
| Dry Cargo | 20' | 2550 |

Contract No.:   LE-MERIDIAN-01
Issue Date:     3 April 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

The Depreciated Replacement Value ("DRV") of a unit shall equal the Replacement Value shown above less depreciation at a rate of five-tenths of one percent (.5%) per month from the date of manufacture to the date of Lessee's declaration of loss. In no event shall the DRV be less than fifty percent (50%) of the Replacement Value.

**12. End of Lease; Build-Down Period**

a) After expiration, cancellation, or other termination of this Lease, all terms and conditions of this Lease continue to apply to the Leased Equipment until all Leased Equipment is redelivered to Lessor and repaired in accordance with the provisions of this Lease.

b) So long as Lessee is not in Default under this Lease, Lessee shall have three (3) months after the expiration or earlier termination date of this Lease to return all Leased Equipment. At the end of the three-month period, or if Lessor has canceled this Lease on account of Lessee's Default, then at the date of such cancellation, Lessee agrees to pay liquidated damages at a daily rate of 150% of the rates specified in Section 5 on each unit of Leased Equipment not yet redelivered. Such liquidated damages shall be paid in addition to any Damage Protection Plan, drop-off, handling, repair or other charges which accrue under the terms of this Lease.

13. This Lease may be amended, modified or changed, only by an agreement in writing. If Lessee takes or retains possession of any Leased Equipment after receipt of this Lease, this Lease, in the form last propounded by Lessor, shall be binding upon both parties, whether or not signed by Lessee. No change to this Lease by Lessee shall bind Lessor unless it is signed or initialed by Lessor's authorized representative.

This Lease, including i) its Equipment Agreement, ii) its Business Terms and Conditions, and iii) any EIRs, faxes, or telexes from Lessor or agreed to in writing by Lessor or its authorized representative, or other writing signed by Lessor, relating to Leased Equipment subject to this Lease, is the complete and exclusive expression of the agreement between Lessor and Lessee with respect to the Leased Equipment referred to in this Equipment Agreement as of the Effective Date. There are no additional terms. No representations or inducements other than those set forth in this Lease have been made by Lessor or relied upon by Lessee.

**M/S MERIDIAN LOGISTICS**

By: _D. JOHN RAJASINGH_

Title: _Managing Partner_

Date: _12 - 04 - 2006_

Contract No.: LE-MERIDIAN-01
Issue Date:    3 April 2006

**FLORENS CONTAINER INC.**

By: _____

Title: _Director_

Date: _2~6. 5. 11_

Initials:
Lessee:
Lessor:

Witness to the signature above of Ying Haifeng in Macau.

Witness : _____
Yong Ka Wai



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

## Redelivery Schedule to Equipment Agreement
## No. LE-MERIDIAN-01
## Effective Date 22 March 2006

| Location | Monthly Turn-in Limit | 20-Foot US$ Drop-off Charge Based on Onhire Period | | |
|---|---|---|---|---|
| | | 365 - 730 | 731-1095 | 1096 or more |
| **Dry Cargo** | | | | |
| India/United Arab Emirates | | | | |
| Bombay | 5 | 50 | 25 | 0 |
| Delhi | 5 | 50 | 25 | 0 |
| Dubai | 5 | 150 | 75 | 0 |
| Madras | 10 | 50 | 25 | 0 |
| Nhava Sheva | 10 | 50 | 25 | 0 |
| Tuticorin | 5 | 50 | 25 | 0 |
| | | | | |
| Asia | | | | |
| Bangkok | 15 | 0 | 0 | 0 |
| Ho Chi Minh | 10 | 50 | 25 | 0 |
| Hong Kong | 10 | 0 | 0 | 0 |
| Jakarta | 10 | 0 | 0 | 0 |
| Kaohsiung | 10 | 0 | 0 | 0 |
| Keelung | 10 | 0 | 0 | 0 |
| Laem Chabang | 15 | 0 | 0 | 0 |
| Port Kelang | 10 | 0 | 0 | 0 |
| Singapore | 10 | 50 | 25 | 0 |
| Surabaya | 10 | 0 | 0 | 0 |

Contract No.:   LE-MERIDIAN-01
Issue Date:     3 April 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

## (INCORPORATED IN THE UNITED STATES)

# FLORENS CONTAINER INC.
## BUSINESS TERMS AND CONDITIONS

1. These Business Terms and Conditions shall be incorporated into any Lease between Lessor and Lessee when incorporated by the terms of any Equipment Agreement. After the first such incorporation they shall be incorporated into any subsequent Lease between Lessor and Lessee unless otherwise provided in that subsequent Lease.

   If there is a conflict between these Business Terms and Conditions and any Equipment Agreement, that Equipment Agreement shall prevail. These Business Terms and Conditions may be amended, modified, or changed, only by an agreement in writing. No changes by Lessee shall bind Lessor unless they are signed or initialed by Lessor's authorized representative.

2. **Communications**

   All invoices and other communications between Lessee and Lessor shall be sent to the Lessor contact address and the Lessee addresses in the applicable Agreement. Communications sent to those addresses shall be binding on Lessee and Lessor unless written notice has been given of a change of address. All notices and communications given under this Lease shall be sent by facsimile or mail. Notices sent by certified mail shall be effective three (3) working days after deposit in the mail, postage prepaid.

3. **Payment Obligation; Late Payments; Billing Disputes**

   a)    All periodic charges applicable to the Leased Equipment shall be computed from the day each unit is leased out through the day it is off-hired, both days included.

   b)    All charges and obligations under the Lease shall be paid in United States Dollars (US$) within thirty (30) calendar days of the invoice date, without set-off or deduction of any kind of any amounts owed Lessee by Lessor. Payments may not be delayed or excused due to foreign currency restrictions. Lessee shall pay a late payment charge of two percent (2%) of the past due balance per month, or such lesser amount as may be permitted by applicable law, on all past due balances.

   c)    Lessee shall notify Lessor in writing, of any disputed item(s) on any invoice within thirty (30) calendar days of the invoice date. Lessee may delay payment of any portion of any invoice which is disputed in good faith until Lessor has provided support for the charges as billed. Within fifteen (15) calendar days of the date of Lessor's reply or providing support, Lessee shall either pay the disputed portion or provide Lessor with another written notice of any items that remain disputed.

   d)    All undisputed items shall be paid on time as provided in Section 3 b).

BT&C, Customer ID:    MERIDIAN
Effective Date:        22 March 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

e)     Lessee's failure to notify the Lessor of a dispute in writing within six (6) months of the date of an invoice shall constitute a final and complete waiver of any such dispute and an unconditional acceptance of the invoice as correct.

## 4.    Default

a)    Should Lessee:

(1)     fail to pay any amounts owed to Lessor within fifteen (15) calendar days after receipt of written notice that such amounts are past due;

(2)     fail to obtain or maintain in effect the insurance policies required by Section 12 or by any other agreement between Lessor and Lessee;

(3)     fail to perform any other obligation provided in this Lease;

(4)     cease doing business as a going concern, become insolvent, or become the subject of bankruptcy proceedings;

(5)     be seized or nationalized by a government or government instrumentality; or

(6)     make or have made any representation or warranty to Lessor which proves to be incorrect in any material respect;

such event shall constitute a Default under this Lease.

b)    Upon any Default, Lessor may cancel any Leases or other agreements then in effect between Lessor and Lessee with respect to any or all Leased Equipment subject to such Leases or other agreements, such cancellation to be effective upon dispatch of a written notice of cancellation to Lessee. And upon any such cancellation of any Lease with respect to one or more items of Leased Equipment:

(1)     Lessee shall pay a fee for Lessee's use and enjoyment of such Leased Equipment held by Lessee at daily rates equal to 150% of the per diem rental rates in the applicable Lease;

(2)     Lessee shall immediately return all such Leased Equipment to Lessor;

(3)     and Lessor may retake possession of such Leased Equipment free of any claim of Lessee. Lessee hereby waives any and all rights to a judicial hearing prior to Lessor's repossession of such Leased Equipment pursuant to this section.

c)    Lessee irrevocably appoints Lessor as the agent and attorney in fact of Lessee, with full power and authority, whenever Lessee is obligated to return Leased Equipment to Lessor, to demand and take possession of the Leased Equipment in the name and on behalf of Lessee from whomever controls it. If Lessor retakes possession of any Leased Equipment, Lessee, to the extent it has authority to do so, authorizes Lessor to take possession of any property in or attached to the Leased Equipment which is not Lessor's property, and without liability for its care or safekeeping, to place it in storage at the risk and expense of Lessee.

BT&C, Customer ID:   MERIDIAN
Effective Date:      22 March 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

d)    No action taken by Lessor under this section shall release Lessee of its obligations under any Lease then in effect between Lessor and Lessee, nor prejudice Lessor's right to recover all provable damages resulting from Lessee's breach of any Lease between Lessor and Lessee. Any forbearance by Lessor to enforce its rights under any Lease following a Default by Lessee shall not constitute a waiver of those rights, nor shall such forbearance waive Lessor's rights with respect to any other Default by Lessee.

5.    **Taxes and Fees**

Lessee shall pay all taxes, charges, and penalties (other than net income taxes levied upon Lessor), arising out of or imposed on the possession, use, control, operation or maintenance of the Leased Equipment until returned to Lessor; or imposed on any lease charges paid to Lessor.

6.    **Unconditional Obligations**

Lessee's performance shall not be excused for any reason, whether or not beyond the control of the Lessee.   Lessee shall have no defenses in the nature of force majeure, impossibility or impracticality, nor any defenses arising from delay, damage or destruction of the Leased Equipment however caused, to its obligations under this Lease.

7.    **Receipt and Condition of Leased Equipment**

A written document (the "EIR") confirming receipt of each unit of Leased Equipment shall be issued at the time of each leaseout and redelivery.

Lessee acknowledges by its execution of EIRs that Leased Equipment is received in good condition, except as stated in any EIR. Lessor confirms that Leased Equipment was manufactured in accordance with applicable standards current at the date of manufacture including those of the International Standards Organisation ("ISO"), the International Convention for Safe Containers ("CSC"), the Customs Convention on the International Transport of Goods ("TIR"), the United States Department of Transportation ("DOT") and the Australian Department of Health.

Lessor warrants that so long as lessee remains in compliance with the terms of this Lease, Lessee shall have quiet possession of the Leased Equipment with respect to all parties claiming by, through, or under Lessor.

8.    **Disclaimer of Warranties**

ALL EQUIPMENT IS LEASED AS IS. LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF ANY LEASED EQUIPMENT, ITS DESIGN, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, USE OR TRADE, OR ITS MERCHANTABILITY. LESSOR SHALL NOT

BT&C, Customer ID:  MERIDIAN
Effective Date:       22 March 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

(INCORPORATED IN THE UNITED STATES)

BE UNDER ANY OBLIGATION TO MAINTAIN, REPAIR, PRESERVE OR KEEP ANY LEASED EQUIPMENT IN GOOD ORDER OR CONDITION WHILE IT IS ON LEASE TO LESSEE.

9.   **Lessee's Use and Care of Leased Equipment**

a)     Lessee may, in the normal course of business, temporarily interchange Leased Equipment to another party.  Lessee remains responsible for all obligations for such Leased Equipment under the Lease.   Lessee may not re-rent, or transfer responsibility under this Lease for any Leased Equipment to another party without Lessor's prior written consent.  Consent may be withheld by Lessor in its sole discretion.  Any such transfer of responsibility will constitute a direct interchange.

b)     Lessee agrees to use the Leased Equipment solely in international or interstate commerce. Lessee agrees to comply in all respects with the Customs Conventions on Containers, 1956 and 1972.

c)     Lessee shall keep the Leased Equipment free from all mortgages, pledges, encumbrances, liens and attachments (other than those created by Lessor) during the term of this Lease and shall take all actions necessary to protect Lessor's title thereto and Lessor's right to possess the Leased Equipment at the expiration or earlier termination of this Lease.

d)     While the Leased Equipment is on lease, Lessee shall, at its own expense, make all repairs and replacements, necessary to maintain, preserve and keep the Leased Equipment in good repair and safe operating condition. All repairs performed and parts used by Lessee shall conform to Institute of International Container Lessors ("IICL"), ISO, manufacturers' and Lessor's specifications and recommendations, and other applicable standards.  Lessee shall ensure that all maintenance or repair work is carried out by facilities approved by the equipment manufacturer or at a facility with comparably skilled labor under competent supervision, and that the performance of maintenance or repairs shall not lessen, limit or otherwise affect adversely any warranty in Lessor's favor covering the Leased Equipment.

e)     While the Leased Equipment is on lease, Lessee shall comply with all loading limitations, handling procedures, and operating and maintenance instructions prescribed by the equipment manufacturers and by Lessor.  At Lessor's request, Lessee shall provide Lessor with copies of all records pertaining to maintenance or repairs Lessee has performed. Lessee shall, at its own expense, comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Lease.

f)     Lessee agrees not to change or obliterate Lessor's markings on the Leased Equipment.  Lessee may add additional markings.  Lessee is responsible for the cost of

| BT&C, Customer ID: | MERIDIAN | Initials: | |
|---|---|---|---|
| Effective Date: | 22 March 2006 | Lessee: | |
| | | Lessor: | |



# FLORENS CONTAINER INC.

### (INCORPORATED IN THE UNITED STATES)

removing these additional markings at the time of off-hire. Lessee shall not make any permanent modification to the Leased Equipment without the prior written consent of Lessor.

g)      Lessee is liable for all damage to, loss, or destruction of Leased Equipment while the Leased Equipment is on lease. Lessee's obligation to pay Lessor for damage, loss or destruction shall not be contingent on any claims Lessee may have against any third party. Lessee shall not be responsible for costs of normal wear and tear as defined by the most current IICL inspection manual. In the event IICL standards do not apply, normal wear and tear shall be defined by the most current manufacturers' and Lessor's damage and repair criteria. Corrosion or deterioration resulting from damage as defined by the IICL, or from failure to follow maintenance or repair instructions prescribed by the equipment manufactures shall not constitute normal wear and tear. Lessee shall be responsible for the repair of such corrosion or deterioration.

h)      All Leased Equipment subject to the CSC shall be supplied to Lessee with a valid CSC plate and shall be covered by Lessor's continuous examination program ("ACEP"). While the Leased Equipment is on lease the Lessee shall have and exercise owner's responsibilities for the purposes of the CSC and shall comply with the CSC in all respects including, without limitation, maintenance, examination, marking, and repair of each unit. If neither the Lessee's country of domicile nor of head office is a signatory to the CSC when an examination is due, Lessee shall nevertheless perform such examination and otherwise comply with the CSC and ACEP implementation regulations of the United States.

i)      At Lessor's request, Lessee shall provide Lessor with copies of all records pertaining to the inspections made under the CSC and ACEP while the Leased Equipment is on lease.

10.    **Loss or Destruction of Leased Equipment**

a)      If a unit of Leased Equipment is lost or destroyed, Lessee shall send a written declaration of loss to Lessor as soon as the loss is known and Lessee shall pay the Replacement Value ("RV") or Depreciated Replacement Value ("DRV") for the unit as stated in the applicable Lease. If a unit is returned to Lessor's designated depot and the repair costs for Lessee's account are higher than the applicable RV or DRV, Lessee shall pay the applicable RV or DRV for the unit.

b)      A destroyed or lost unit that has not been returned to Lessor's designated depot shall be off-hired on the date of Lessee's declaration of loss, provided that the applicable RV or DRV is paid within thirty (30) calendar days of the date of Lessor's invoice. Otherwise, the unit shall be off-hired on the date the invoice is paid.

BT&C, Customer ID:   MERIDIAN
Effective Date:          22 March 2006

Initials:
Lessee:
Lessor:

# FLORENS CONTAINER INC.

## (INCORPORATED IN THE UNITED STATES)

c)      Upon payment of the applicable RV or DRV for any unit, Lessee shall have the right to keep the unit. If a unit has been returned to Lessor's designated depot and Lessee does not state that it wants to keep the unit on its declaration of loss, the unit will remain the property of Lessor. If a Lessee has stated that it wants to keep a unit, Lessee must take possession of that unit within sixty (60) calendar days of the payment of the applicable RV or DRV or the unit shall remain the property of Lessor.

11. **Annual Inspection; Access to Lessee's Records**

a)      Lessor reserves the right to inspect Leased Equipment while on lease. Lessee agrees to make designated Leased Equipment available at its facilities for inspection by Lessor or its agent, within sixty (60) calendar days after receipt of a written notice from Lessor.

b)      When requested by Lessor, Lessee agrees to provide equipment tracking reports or other business records showing the locations of the Leased Equipment at the time of the request, or during a specified past time period.

c)      Lessee shall give Lessor complete audited year-end financial statements each year. If Lessee does not have audited financial statements, Lessee shall give Lessor each year financial statements certified by Lessee's chief financial officer as accurate and consistent with prior years' accounting practices. In the event of a Default, Lessee agrees to provide interim financial statements and to make its accounting records available for inspection by Lessor. Except as necessary for Lessor's business and legal dealings with Lessee or the Leased Equipment, Lessor shall maintain any confidentiality of financial statements so provided.

12. **Insurance**

a)      Lessee shall, at its own cost and expense, maintain the following minimum amounts of insurance issued by insurers satisfactory to Lessor:

     (1)      All Risk Physical Damage Insurance in an amount equal to the Replacement Value of all leased Equipment while on land, afloat, in transit or at rest anywhere in the world, including Particular Average and General Average.

     (2)      Comprehensive Vehicle Liability and Comprehensive General Liability for Bodily Injury and Property Damage including Products Liability, Contractual Liability, Cross Liability and Broad Form Property Damage Liability, subject to a Combined Single Limit of Liability of US$ 10,000,000 per occurrence.

b)      Lessor shall be named "Additional insured" and "Loss Payee" with respect to the All Risk Insurance and "Additional Insured" with respect to the liability insurance.

BT&C, Customer ID:      MERIDIAN
Effective Date:      22 March 2006

Initials:
Lessee:
Lessor:

# FLORENS CONTAINER INC.

(INCORPORATED IN THE UNITED STATES)

c)    All such insurance shall be endorsed to indicate that:

(1)    it will be considered primary and that any and all insurance maintained by Lessor with respect to the Leased Equipment, will be considered secondary thereto;

(2)    the interests of Lessor shall be insured regardless of any breach or violation by the Lessee of any warranties, declarations or conditions contained in such policies; and

(3)    such policies may not be canceled or materially changed without thirty (30) calendar days prior written notice to Lessor of such cancellation or change.

d)    Lessee shall not use or allow the Leased Equipment to be used for any purpose not permitted or covered by the terms and conditions of such insurance policies, or do or allow to be done any act which may invalidate the insurance.

e)    Upon execution of these Terms and Conditions Lessee shall give Lessor certificates of insurance confirming the coverages required. At Lessor's request, Lessee shall provide additional certificates within fifteen (15) calendar days after the request is made. The maintenance of insurance by the Lessee shall not limit or modify the Lessee's obligations under any Lease between Lessor and Lessee.

13.    **Indemnification**

a)    Lessee shall indemnify, defend and hold harmless Lessor, from and against all loss, liability, damage, cost and expense (including, but not limited to, reasonable attorneys' fees), arising from:

(1)    any claim for injury to or illness or death of persons or loss of or damage to property, cargo, or vessels due to any cause whatsoever, including but not limited to negligence, gross negligence and strict liability in tort (but not including Lessor's willful or reckless misconduct), arising from accidents or occurrences involving any Leased Equipment in the possession, custody, or control of Lessee;

(2)    Lessee's breach of its obligations under any Lease;

(3)    Lessee's failure to keep the Leased Equipment free from mortgages, pledges, encumbrances, liens and attachments.

In no event shall Lessor be liable for incidental or consequential damages to Lessee.

b)    Lessee shall at its own expense comply with all laws, regulations and/or orders which in any way affect the Leased Equipment or its use, operation or storage. Lessor shall not have any responsibility during the term of any Lease for compliance with any laws, regulations or orders affecting the Leased Equipment, including, without limitation, all such laws, regulations or orders as may relate to customs, transportation, handling, safety and labor regulation and with applicable rules and regulations of the DOT, the

BT&C, Customer ID:    MERIDIAN
Effective Date:    22 March 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

(INCORPORATED IN THE UNITED STATES)

United States Environmental Protection Agency ("EPA") and of any other governmental entity whose laws may be applicable to the Equipment.

c)    The indemnities contained herein shall survive the expiration or earlier cancellation or termination of any Lease with respect to all events, facts, conditions or other circumstances occurring or existing prior to such expiration, cancellation or termination and are expressly made for the benefit of, and shall be enforceable by, any indemnitee.

14.    **Governing Law**

a)    The maritime law of the United States of America and the law of the State of California, other than its rules of conflict of laws, shall apply to all matters relating to any Lease or any Leased Equipment. Lessor may, at its sole option, require:

(1)    that any action or proceeding relating to any Lease or Leased Equipment be brought in or transferred to a state or federal court in San Francisco, California; or

(2)    that any dispute relating to any Lease or Leased Equipment be determined by arbitration before the American Arbitration Association, according to its rules for commercial arbitration, in San Francisco, California.

b)    Lessee shall pay Lessor's reasonable collection expenses and attorneys' fees in any action or proceeding relating to any Lease or Leased Equipment.

15.    **Maritime Lien**

Lessor and Lessee agree that: i) each unit of Leased Equipment leased to Lessee is necessary to, and leased and furnished for use aboard, vessels owned, operated, chartered and/or managed by Lessee for ocean transportation of goods and land use incidental thereto; ii) each Lease is made not only on the credit of Lessee but also on the credit of the aforesaid vessels; and iii) Lessee grants and Lessor may assert maritime liens against such vessels for any breach of any Lease.

16.    **Sovereign immunity**

Lessee hereby waives any immunity from jurisdiction, pre-judgment seizure, arrest or attachment, and/or execution or enforcement of any judgment or award obtained by Lessor to which Lessee might otherwise be entitled, under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. Sections 1602-1611, or under any similar legislation, rules or regulations of any other country having application to Lessee in any action or proceeding brought by Lessor arising out of or related to any Lease or the Leased Equipment.

BT&C, Customer ID:    MERIDIAN
Effective Date:    22 March 2006

Initials:
Lessee:
Lessor:



# FLORENS CONTAINER INC.

(INCORPORATED IN THE UNITED STATES)

17. **Assignment**

a)    Lessee may not assign or transfer any Lease without the Lessor's prior written consent. Lessor, in its sole discretion, may withhold consent. All Leases shall be binding upon Lessee and its successors and assigns.

b)    Lessor may assign or transfer in whole or in part any Lease and/or the payments due under that Lease. Lessee agrees to make all required payments to the assignee. Such assignment or transfer shall not relieve Lessee of any of its obligations under that Lease. In the case of any partial assignment or transfer, no assignee shall be required to join any other assignee in any legal proceeding relating to that Lease and such partial assignment or transfer shall be deemed to assign or transfer a divided, rather than an undivided, interest in the Lease.

18. **Miscellaneous**

a)    Pickup or redelivery of Leased Equipment or any other act by an agent or employee of, or independent contractor engaged by, Lessee shall be deemed to be the act of Lessee.

b)    The provisions of any Lease are separable.  If any provision is legally declared void, that provision shall be deemed severed from the applicable Lease and the remaining provisions shall continue in full force.

c)    Paragraph headings are for convenience only.

d)    All Leases may be executed in counterparts.

M/S MERIDIAN LOGISTICS                    FLORENS CONTAINER INC.

By: D. JOHN RAJA SING                     By: _____

Title: Managing _____                   Title: _Director_

Date: _12 - 04 - 2006_                     Date: _2__6.5.11_

                                          Witness to the signature above
                                          of Ying Haifeng in Macau.

                                          Witness : _____
                                               Yong Ka Wai
BT&C, Customer ID:    MERIDIAN            ID NO. 1/250833/9      Initials:
Effective Date:       22 March 2006                             Lessee:
                                                               Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

## FLORENS MANAGEMENT SERVICES
## (MACAO COMMERCIAL OFFHORE) LIMITED
## EQUIPMENT AGREEMENT NO. LT-MERIDIAN-01
## EFFECTIVE DATE 15 JULY 2006

**Lessor:**
Florens Management Services
(Macao Commercial Offshore) Limited
Alameda Dr. Carlos d'Assumpcao N. 355
Edif. Centro Hotline, 21 andar (W)
Macao, China

**Lessor's Contact Address:**
Florens Container Services (UK) Ltd.
Kingmaker House
Station House
New Barnet, Herts EN5 1NZ
Telephone Number:      44-20-8370-0700
Fax Number:             44-20-8275-0777

**Lessee:**
M/S Meridian Logistics
5/232H Annai Indhra Nagar 2nd Street
Tuticorin 628002
India

1.  This Lease between Lessor and Lessee shall comprise two parts: i) an Equipment Agreement, and ii) Business Terms and Conditions.

    If Business Terms and Conditions are physically attached to this Equipment Agreement, those Business Terms and Conditions as well as any subsequent revisions or amendments to them, are parts of this Lease. If no Business Terms and Conditions are physically attached to this Agreement, then the Business Terms and Conditions between Lessor and Lessee of the most recent date of execution are incorporated into this Lease by reference. Otherwise, Lessor's standard Business Terms and Conditions as of the Effective Date of this Agreement are incorporated into this Lease by reference.

2.  The terms of this Lease shall apply to all Leased Equipment taken on lease by Lessee on or after the Effective Date of this Lease, except for Leased Equipment which is expressly made subject to another lease between Lessor and Lessee by reference to type, age or other criteria.

3.    In this Lease,

    a) "Leased Equipment" shall mean any personal property owned or managed by Lessor taken into the possession of Lessee by agreement with Lessor, whether by interchange from Lessor or otherwise.

    b) A 20-foot (20') container shall equal one "TEU"; a 40-foot (40') container shall equal two "TEU".

Contract No.:  LT-MERIDIAN-01
Issue Date:      26 July 2006

Initials:
Lessee:
Lessor:

**Exhibit B**



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

4.    This Lease shall be in effect from 15 July 2006 (the "Effective Date") through 31 March 2009. During this period, Lessor may terminate this Lease by sending a written notice to Lessee at least sixty (60) calendar days in advance of the termination date.

5.    **Rental Rates per Unit of Leased Equipment per day; Minimum Lease Period:**

| Equipment Type | Size | US$ Rate per day |
|---|---|---|
| Dry Cargo | 40' | 0.96 |
| High Cube Dry Cargo | 40' | 1.02 |

Each unit of Leased Equipment shall remain on lease for a minimum period of 1096 days calculated from the onhire date.

6.    **Handling Charges**

Lessee shall pay a handling charge of US$ 35 on each leaseout and each redelivery of a unit of Leased Equipment.

7.    **Direct Interchange Fee**

Lessee shall pay a direct interchange fee of US$ 15 for each unit of Leased Equipment given to or received from another party through a direct interchange.

This provision does not imply consent to any interchange or obligate Lessor to consent to any interchange.

8.    **Return of Leased Equipment; Redelivery Quantities; Drop-off Charges and Credits**

a) All Leased Equipment must be returned to Lessor's designated depot at a location shown in this Lease and agreed upon by Lessor and Lessee at the time of booking. Lessor reserves the right to close any location to redeliveries. Lessor agrees to give a written notice to Lessee ninety (90) calendar days in advance of the effective date of such closure.

b) Lessor shall accept for redelivery each month (on a non-cumulative basis) the maximum numbers of units of Leased Equipment of the types shown in the locations listed in the Redelivery Schedule. Drop-off Charges and/or Credits shall be paid by Lessee or credited to Lessee in accordance with that Schedule.

9.    **Off-hire Date; Repairs at Off-Hire**

a) Each unit of Leased Equipment shall be off-hired on the date it is redelivered to Lessor's designated depot. Lessor or its agent shall inspect all Leased Equipment after redelivery.

Contract No.:    LT-MERIDIAN-01
Issue Date:      26 July 2006

Initials:
Lessee:
Lessor:

# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

b) If a unit of Leased Equipment is found to be damaged:

(1)    Lessor or its agent shall send Lessee an estimate of the costs for Lessee's account.

(2)    Lessee shall notify Lessor within five (5) working days from the estimate date, of any disagreement with the estimate amount.

If no notice of disagreement is received, Lessee shall be deemed to have agreed to the costs as estimated. Lessor or its agent shall invoice Lessee, and Lessee shall pay, the costs as estimated.

(3)    If a notice of disagreement is received, Lessor shall hold the unit for five (5) working days from the date of the notice so that it may be inspected by Lessee or its agent. Lessee will give the results of its inspection to Lessor within the five (5) working days from the date of the notice.

(4)    If there is still disagreement as to the estimate amount, Lessor and Lessee shall appoint a surveyor to perform a joint survey within two (2) working days of receipt of Lessee's inspection report. The results of the joint survey will be binding. Lessor or its agent shall invoice Lessee, and Lessee shall pay, the costs as determined by the joint survey. Lessor and Lessee shall each pay one-half (½) of the surveyor's fee.

10.    **Replacement Values per unit of Leased Equipment**

| Equipment Type | Size | US$ Replacement Value |
|---|---|---|
| Dry Cargo | 40' | 4100 |
| High Cube Dry Cargo | 40' | 4250 |

The Depreciated Replacement Value ("DRV") of a unit shall equal the Replacement Value shown above less depreciation at a rate of five-tenths of one percent (.5%) per month from the date of manufacture to the date of Lessee's declaration of loss. In no event shall the DRV be less than fifty percent (50%) of the Replacement Value.

11.    **End of Lease; Build-Down Period**

a) After expiration, cancellation, or other termination of this Lease, all terms and conditions of this Lease continue to apply to the Leased Equipment until all Leased Equipment is redelivered to Lessor and repaired in accordance with the provisions of this Lease.

b) So long as Lessee is not in Default under this Lease, Lessee shall have three (3) months after the expiration or earlier termination date of this Lease to return all Leased Equipment. At the end of the three-month period, or if Lessor has canceled this Lease on account of Lessee's Default, then at the date of such cancellation, Lessee agrees to pay liquidated

Contract No.:    LT-MERIDIAN-01
Issue Date:      26 July 2006

Initials:
Lessee: 
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

damages at a daily rate of 150% of the rates specified in Section 5 on each unit of Leased Equipment not yet redelivered. Such liquidated damages shall be paid in addition to any Damage Protection Plan, drop-off, handling, repair or other charges which accrue under the terms of this Lease.

12. This Lease may be amended, modified or changed, only by an agreement in writing. If Lessee takes or retains possession of any Leased Equipment after receipt of this Lease, this Lease, in the form last propounded by Lessor, shall be binding upon both parties, whether or not signed by Lessee. No change to this Lease by Lessee shall bind Lessor unless it is signed or initialed by Lessor's authorized representative.

13. Lessor is either the owner or sole and exclusive manager of the containers subject to this Agreement. For containers which are owned by third party container owners and for which it acts as manager, Lessor warrants that the titled owners of those containers have given Lessor the right to lease those containers, as Lessor, to Lessee.

This Lease, including i) its Equipment Agreement, ii) its Business Terms and Conditions, and iii) any EIRs, faxes, or telexes from Lessor or agreed to in writing by Lessor or its authorized representative, or other writing signed by Lessor, relating to Leased Equipment subject to this Lease, is the complete and exclusive expression of the agreement between Lessor and Lessee with respect to the Leased Equipment referred to in this Equipment Agreement as of the Effective Date. There are no additional terms. No representations or inducements other than those set forth in this Lease have been made by Lessor or relied upon by Lessee.

M/S MERIDIAN LOGISTICS

By: D. John Raja Singh

Title: Managing Partner

Date: 07-09-2006

FLORENS MANAGEMENT SERVICES (MACAO COMMERCIAL OFFSHORE) LIMITED

By: _____

Title: VP

Date: 21 Nov 2006

Witness to the signature above of Zhang Biming in Macau.

Witness: _____
Yong Ka Wai
ID NO. 1/250833/9

Initials:

Lessee:

Lessor:



Contract No.: LT-MERIDIAN-01
Issue Date: 26 July 2006



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

### (INCORPORATED IN MACAU)

## Redelivery Schedule to Equipment Agreement
## No. LT-MERIDIAN-01
## Effective Date 15 July 2006

| | 40-Foot | | | 40-Foot High Cube | | |
|---|---|---|---|---|---|---|
| Location | Monthly Turn-in Limit | US$ Drop-off Charge | US$ Drop-off Credit | Monthly Turn-in Limit | US$ Drop-off Charge | US$ Drop-off Credit |
| **Dry Cargo** | | | | | | |
| India/United Arab Emirates | | | | | | |
| Cochin | 0 | 0 | 0 | 2 | 0 | 0 |
| Dubai | 0 | 0 | 0 | 2 | 0 | 0 |
| Madras | 1 | 0 | 0 | 5 | 0 | 0 |
| Nhava Sheva | 1 | 0 | 0 | 5 | 0 | 0 |
| Tuticorin | 0 | 0 | 0 | 2 | 0 | 0 |
| | | | | | | |
| Far East | | | | | | |
| Bangkok | 10 | 0 | 0 | 10 | 0 | 0 |
| Colombo | 0 | 0 | 0 | 2 | 0 | 0 |
| Dalian | 5 | 0 | 0 | 5 | 0 | 0 |
| Ho Chi Minh | 5 | 0 | 0 | 5 | 0 | 0 |
| Hong Kong | 5 | 0 | 0 | 10 | 0 | 0 |
| Inchon | 2 | 0 | 0 | 2 | 0 | 0 |
| Jakarta | 5 | 0 | 0 | 5 | 0 | 0 |
| Kaohsiung | 10 | 0 | 0 | 10 | 0 | 0 |
| Keelung | 10 | 0 | 0 | 10 | 0 | 0 |
| Kobe | 10 | 0 | 0 | 5 | 0 | 0 |
| Laem Chabang | 10 | 0 | 0 | 10 | 0 | 0 |
| Nagoya | 10 | 0 | 0 | 5 | 0 | 0 |
| Port Kelang | 5 | 0 | 0 | 5 | 0 | 0 |
| Pusan | 10 | 0 | 0 | 10 | 0 | 0 |
| Qingdao | 5 | 0 | 0 | 5 | 0 | 0 |
| Seoul | 5 | 0 | 0 | 5 | 0 | 0 |
| Shanghai | 5 | 0 | 0 | 5 | 0 | 0 |
| Shekou | 10 | 0 | 0 | 10 | 0 | 0 |
| Singapore | 5 | 0 | 0 | 3 | 0 | 0 |
| Surabaya | 5 | 0 | 0 | 5 | 0 | 0 |
| Tianjin | 5 | 0 | 0 | 5 | 0 | 0 |
| Yantian | 10 | 0 | 0 | 10 | 0 | 0 |
| Yokohama | 5 | 0 | 0 | 10 | 0 | 0 |

Contract No.:  LT-MERIDIAN-01
Issue Date:    26 July 2006

Initials:
Lessee: 
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

### (INCORPORATED IN MACAU)

## FLORENS MANAGEMENT SERVICES
## (MACAO COMMERCIAL OFFHORE) LIMITED
## BUSINESS TERMS AND CONDITIONS

1.  These Business Terms and Conditions shall be incorporated into any Lease between Lessor and Lessee when incorporated by the terms of any Equipment Agreement. After the first such incorporation they shall be incorporated into any subsequent Lease between Lessor and Lessee unless otherwise provided in that subsequent Lease.

    If there is a conflict between these Business Terms and Conditions and any Equipment Agreement, that Equipment Agreement shall prevail. These Business Terms and Conditions may be amended, modified, or changed, only by an agreement in writing. No changes by Lessee shall bind Lessor unless they are signed or initialed by Lessor's authorized representative.

2.  **Communications**

    All invoices and other communications between Lessee and Lessor shall be sent to the Lessor contact address and the Lessee addresses in the applicable Agreement. Communications sent to those addresses shall be binding on Lessee and Lessor unless written notice has been given of a change of address. All notices and communications given under this Lease shall be sent by facsimile or mail. Notices sent by certified mail shall be effective three (3) working days after deposit in the mail, postage prepaid.

3.  **Payment Obligation; Late Payments; Billing Disputes**

    a) All periodic charges applicable to the Leased Equipment shall be computed from the day each unit is leased out through the day it is off-hired, both days included.

    b) All charges and obligations under the Lease shall be paid in United States Dollars (US$) within thirty (30) calendar days of the invoice date, without set-off or deduction of any kind of any amounts owed Lessee by Lessor. Payments may not be delayed or excused due to foreign currency restrictions. Lessee shall pay a late payment charge of two percent (2%) of the past due balance per month, or such lesser amount as may be permitted by applicable law, on all past due balances.

    c) Lessee shall notify Lessor in writing, of any disputed item(s) on any invoice within thirty (30) calendar days of the invoice date. Lessee may delay payment of any portion of any invoice which is disputed in good faith until Lessor has provided support for the charges as billed. Within fifteen (15) calendar days of the date of Lessor's reply or providing support, Lessee shall either pay the disputed portion or provide Lessor with another written notice of any items that remain disputed.

    d) All undisputed items shall be paid on time as provided in Section 3 b).

BT&C, Customer ID:   MERIDIAN
Effective Date:          15 July 2006

Initials:
Lessee:
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

### (INCORPORATED IN MACAU)

e)      Lessee's failure to notify the Lessor of a dispute in writing within six (6) months of the date of an invoice shall constitute a final and complete waiver of any such dispute and an unconditional acceptance of the invoice as correct.

4.    **Default**

a)      Should Lessee:

(1)      fail to pay any amounts owed to Lessor within fifteen (15) calendar days after receipt of written notice that such amounts are past due;

(2)      fail to obtain or maintain in effect the insurance policies required by Section 12 or by any other agreement between Lessor and Lessee;

(3)      fail to perform any other obligation provided in this Lease;

(4)      cease doing business as a going concern, become insolvent, or become the subject of bankruptcy proceedings;

(5)      be seized or nationalized by a government or government instrumentality; or

(6)      make or have made any representation or warranty to Lessor which proves to be incorrect in any material respect;

such event shall constitute a Default under this Lease.

b)      Upon any Default, Lessor may cancel any Leases or other agreements then in effect between Lessor and Lessee with respect to any or all Leased Equipment subject to such Leases or other agreements, such cancellation to be effective upon dispatch of a written notice of cancellation to Lessee.  And upon any such cancellation of any Lease with respect to one or more items of Leased Equipment:

(1)      Lessee shall pay a fee for Lessee's use and enjoyment of such Leased Equipment held by Lessee at daily rates equal to 150% of the per diem rental rates in the applicable Lease;

(2)      Lessee shall immediately return all such Leased Equipment to Lessor;

(3)      and Lessor may retake possession of such Leased Equipment free of any claim of Lessee. Lessee hereby waives any and all rights to a judicial hearing prior to Lessor's repossession of such Leased Equipment pursuant to this section.

c)      Lessee irrevocably appoints Lessor as the agent and attorney in fact of Lessee, with full power and authority, whenever Lessee is obligated to return Leased Equipment to Lessor, to demand and take possession of the Leased Equipment in the name and on behalf of Lessee from whomever controls it.  If Lessor retakes possession of any Leased Equipment, Lessee, to the extent it has authority to do so, authorizes Lessor to take possession of any property in or attached to the Leased Equipment which is not Lessor's property, and without liability for its care or safekeeping, to place it in storage at the risk and expense of Lessee.

BT&C, Customer ID:    MERIDIAN                               Initials:
Effective Date:           15 July 2006                          Lessee: _____

Lessor: 



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

### (INCORPORATED IN MACAU)

d)      No action taken by Lessor under this section shall release Lessee of its obligations under any Lease then in effect between Lessor and Lessee, nor prejudice Lessor's right to recover all provable damages resulting from Lessee's breach of any Lease between Lessor and Lessee. Any forbearance by Lessor to enforce its rights under any Lease following a Default by Lessee shall not constitute a waiver of those rights, nor shall such forbearance waive Lessor's rights with respect to any other Default by Lessee.

5.   **Taxes and Fees**

Lessee shall pay all taxes, charges, and penalties (other than net income taxes levied upon Lessor), arising out of or imposed on the possession, use, control, operation or maintenance of the Leased Equipment until returned to Lessor; or imposed on any lease charges paid to Lessor.

6.   **Unconditional Obligations**

Lessee's performance shall not be excused for any reason, whether or not beyond the control of the Lessee.  Lessee shall have no defenses in the nature of force majeure, impossibility or impracticality, nor any defenses arising from delay, damage or destruction of the Leased Equipment however caused, to its obligations under this Lease.

7.   **Receipt and Condition of Leased Equipment**

A written document (the "EIR") confirming receipt of each unit of Leased Equipment shall be issued at the time of each leaseout and redelivery.

Lessee acknowledges by its execution of EIRs that Leased Equipment is received in good condition, except as stated in any EIR. Lessor confirms that Leased Equipment was manufactured in accordance with applicable standards current at the date of manufacture including those of the International Standards Organisation ("ISO"), the International Convention for Safe Containers ("CSC"), the Customs Convention on the International Transport of Goods ("TIR"), the United States Department of Transportation ("DOT") and the Australian Department of Health.

Lessor warrants that so long as lessee remains in compliance with the terms of this Lease, Lessee shall have quiet possession of the Leased Equipment with respect to all parties claiming by, through, or under Lessor.

8.   **Disclaimer of Warranties**

ALL EQUIPMENT IS LEASED AS IS. LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE CONDITION OF ANY LEASED EQUIPMENT, ITS DESIGN, SUITABILITY OR FITNESS FOR ANY PARTICULAR

BT&C, Customer ID:    MERIDIAN
Effective Date:          15 July 2006

Initials:
Lessee: _____
Lessor: _____





# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

PURPOSE, USE OR TRADE, OR ITS MERCHANTABILITY. LESSOR SHALL NOT BE UNDER ANY OBLIGATION TO MAINTAIN, REPAIR, PRESERVE OR KEEP ANY LEASED EQUIPMENT IN GOOD ORDER OR CONDITION WHILE IT IS ON LEASE TO LESSEE.

9.    **Lessee's Use and Care of Leased Equipment**

a)    Lessee may, in the normal course of business, temporarily interchange Leased Equipment to another party.  Lessee remains responsible for all obligations for such Leased Equipment under the Lease.  Lessee may not re-rent, or transfer responsibility under this Lease for any Leased Equipment to another party without Lessor's prior written consent.  Consent may be withheld by Lessor in its sole discretion.  Any such transfer of responsibility will constitute a direct interchange.

b)    Lessee agrees to use the Leased Equipment solely in international or interstate commerce. Lessee agrees to comply in all respects with the Customs Conventions on Containers, 1956 and 1972.

c)    Lessee shall keep the Leased Equipment free from all mortgages, pledges, encumbrances, liens and attachments (other than those created by Lessor) during the term of this Lease and shall take all actions necessary to protect Lessor's title thereto and Lessor's right to possess the Leased Equipment at the expiration or earlier termination of this Lease.

d)    While the Leased Equipment is on lease, Lessee shall, at its own expense, make all repairs and replacements, necessary to maintain, preserve and keep the Leased Equipment in good repair and safe operating condition. All repairs performed and parts used by Lessee shall conform to Institute of International Container Lessors ("IICL"), ISO, manufacturers' and Lessor's specifications and recommendations, and other applicable standards.  Lessee shall ensure that all maintenance or repair work is carried out by facilities approved by the equipment manufacturer or at a facility with comparably skilled labor under competent supervision, and that the performance of maintenance or repairs shall not lessen, limit or otherwise affect adversely any warranty in Lessor's favor covering the Leased Equipment.

e)    While the Leased Equipment is on lease, Lessee shall comply with all loading limitations, handling procedures, and operating and maintenance instructions prescribed by the equipment manufacturers and by Lessor. At Lessor's request, Lessee shall provide Lessor with copies of all records pertaining to maintenance or repairs Lessee has performed. Lessee shall, at its own expense, comply with all rules and practices of ports, depots, storage areas and transportation companies consistent with the other requirements of this Lease.

BT&C, Customer ID:    MERIDIAN
Effective Date:        15 July 2006

Initials:
Lessee:
Lessor:





# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

f)      Lessee agrees not to change or obliterate Lessor's markings on the Leased Equipment. Lessee may add additional markings. Lessee is responsible for the cost of removing these additional markings at the time of off-hire. Lessee shall not make any permanent modification to the Leased Equipment without the prior written consent of Lessor.

g)      Lessee is liable for all damage to, loss, or destruction of Leased Equipment while the Leased Equipment is on lease. Lessee's obligation to pay Lessor for damage, loss or destruction shall not be contingent on any claims Lessee may have against any third party. Lessee shall not be responsible for costs of normal wear and tear as defined by the most current IICL inspection manual. In the event IICL standards do not apply, normal wear and tear shall be defined by the most current manufacturers' and Lessor's damage and repair criteria. Corrosion or deterioration resulting from damage as defined by the IICL, or from failure to follow maintenance or repair instructions prescribed by the equipment manufactures shall not constitute normal wear and tear. Lessee shall be responsible for the repair of such corrosion or deterioration.

h)      All Leased Equipment subject to the CSC shall be supplied to Lessee with a valid CSC plate and shall be covered by Lessor's continuous examination program ("ACEP"). While the Leased Equipment is on lease the Lessee shall have and exercise owner's responsibilities for the purposes of the CSC and shall comply with the CSC in all respects including, without limitation, maintenance, examination, marking, and repair of each unit. If neither the Lessee's country of domicile nor of head office is a signatory to the CSC when an examination is due, Lessee shall nevertheless perform such examination and otherwise comply with the CSC and ACEP implementation regulations of the United States.

i)      At Lessor's request, Lessee shall provide Lessor with copies of all records pertaining to the inspections made under the CSC and ACEP while the Leased Equipment is on lease.

## 10.   Loss or Destruction of Leased Equipment

a)      If a unit of Leased Equipment is lost or destroyed, Lessee shall send a written declaration of loss to Lessor as soon as the loss is known and Lessee shall pay the Replacement Value ("RV") or Depreciated Replacement Value ("DRV") for the unit as stated in the applicable Lease. If a unit is returned to Lessor's designated depot and the repair costs for Lessee's account are higher than the applicable RV or DRV, Lessee shall pay the applicable RV or DRV for the unit.

b)      A destroyed or lost unit that has not been returned to Lessor's designated depot shall be off-hired on the date of Lessee's declaration of loss, provided that the applicable RV or DRV is paid within thirty (30) calendar days of the date of Lessor's invoice. Otherwise, the unit shall be off-hired on the date the invoice is paid.

BT&C, Customer ID:   MERIDIAN
Effective Date:          15 July 2006

Initials:
Lessee:
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

c)    Upon payment of the applicable RV or DRV for any unit, Lessee shall have the right to keep the unit. If a unit has been returned to Lessor's designated depot and Lessee does not state that it wants to keep the unit on its declaration of loss, the unit will remain the property of Lessor. If a Lessee has stated that it wants to keep a unit, Lessee must take possession of that unit within sixty (60) calendar days of the payment of the applicable RV or DRV or the unit shall remain the property of Lessor.

11.    **Annual Inspection; Access to Lessee's Records**

a)    Lessor reserves the right to inspect Leased Equipment while on lease. Lessee agrees to make designated Leased Equipment available at its facilities for inspection by Lessor or its agent, within sixty (60) calendar days after receipt of a written notice from Lessor.

b)    When requested by Lessor, Lessee agrees to provide equipment tracking reports or other business records showing the locations of the Leased Equipment at the time of the request, or during a specified past time period.

c)    Lessee shall give Lessor complete audited year-end financial statements each year. If Lessee does not have audited financial statements, Lessee shall give Lessor each year financial statements certified by Lessee's chief financial officer as accurate and consistent with prior years' accounting practices. In the event of a Default, Lessee agrees to provide interim financial statements and to make its accounting records available for inspection by Lessor. Except as necessary for Lessor's business and legal dealings with Lessee or the Leased Equipment, Lessor shall maintain any confidentiality of financial statements so provided.

12.    **Insurance**

a)    Lessee shall, at its own cost and expense, maintain the following minimum amounts of insurance issued by insurers satisfactory to Lessor:

(1)    All Risk Physical Damage Insurance in an amount equal to the Replacement Value of all leased Equipment while on land, afloat, in transit or at rest anywhere in the world, including Particular Average and General Average.
(2)    Comprehensive Vehicle Liability and Comprehensive General Liability for Bodily Injury and Property Damage including Products Liability, Contractual Liability, Cross Liability and Broad Form Property Damage Liability, subject to a Combined Single Limit of Liability of US$ 10,000,000 per occurrence.

b)    Lessor shall be named "Additional insured" and "Loss Payee" with respect to the All Risk Insurance and "Additional Insured" with respect to the liability insurance.

BT&C, Customer ID:    MERIDIAN
Effective Date:         15 July 2006

Initials:
Lessee:
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

c)    All such insurance shall be endorsed to indicate that:

(1)    it will be considered primary and that any and all insurance maintained by Lessor with respect to the Leased Equipment, will be considered secondary thereto;

(2)    the interests of Lessor shall be insured regardless of any breach or violation by the Lessee of any warranties, declarations or conditions contained in such policies; and

(3)    such policies may not be canceled or materially changed without thirty (30) calendar days prior written notice to Lessor of such cancellation or change.

d)    Lessee shall not use or allow the Leased Equipment to be used for any purpose not permitted or covered by the terms and conditions of such insurance policies, or do or allow to be done any act which may invalidate the insurance.

e)    Upon execution of these Terms and Conditions Lessee shall give Lessor certificates of insurance confirming the coverages required. At Lessor's request, Lessee shall provide additional certificates within fifteen (15) calendar days after the request is made. The maintenance of insurance by the Lessee shall not limit or modify the Lessee's obligations under any Lease between Lessor and Lessee.

## 13.    Indemnification

a)    Lessee shall indemnify, defend and hold harmless Lessor, from and against all loss, liability, damage, cost and expense (including, but not limited to, reasonable attorneys' fees), arising from:

(1)    any claim for injury to or illness or death of persons or loss of or damage to property, cargo, or vessels due to any cause whatsoever, including but not limited to negligence, gross negligence and strict liability in tort (but not including Lessor's willful or reckless misconduct), arising from accidents or occurrences involving any Leased Equipment in the possession, custody, or control of Lessee;

(2)    Lessee's breach of its obligations under any Lease;

(3)    Lessee's failure to keep the Leased Equipment free from mortgages, pledges, encumbrances, liens and attachments.

In no event shall Lessor be liable for incidental or consequential damages to Lessee.

b)    Lessee shall at its own expense comply with all laws, regulations and/or orders which in any way affect the Leased Equipment or its use, operation or storage. Lessor shall not have any responsibility during the term of any Lease for compliance with any laws, regulations or orders affecting the Leased Equipment, including, without limitation, all such laws, regulations or orders as may relate to customs, transportation, handling, safety and labor regulation and with applicable rules and regulations of the DOT, the

BT&C, Customer ID:    MERIDIAN
Effective Date:    15 July 2006

Initials:
Lessee:
Lessor:



# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

United States Environmental Protection Agency ("EPA") and of any other governmental entity whose laws may be applicable to the Equipment.

c)    The indemnities contained herein shall survive the expiration or earlier cancellation or termination of any Lease with respect to all events, facts, conditions or other circumstances occurring or existing prior to such expiration, cancellation or termination and are expressly made for the benefit of, and shall be enforceable by, any indemnitee.

## 14.    Governing Law

a)    The maritime law of the United States of America and the law of the State of California, other than its rules of conflict of laws, shall apply to all matters relating to any Lease or any Leased Equipment.  Lessor may, at its sole option, require:

(1)    that any action or proceeding relating to any Lease or Leased Equipment be brought in or transferred to a state or federal court in San Francisco, California; or

(2)    that any dispute relating to any Lease or Leased Equipment be determined by arbitration before the American Arbitration Association, according to its rules for commercial arbitration, in San Francisco, California.

b)    Lessee shall pay Lessor's reasonable collection expenses and attorneys' fees in any action or proceeding relating to any Lease or Leased Equipment.

## 15.    Maritime Lien

Lessor and Lessee agree that: i) each unit of Leased Equipment leased to Lessee is necessary to, and leased and furnished for use aboard, vessels owned, operated, chartered and/or managed by Lessee for ocean transportation of goods and land use incidental thereto; ii) each Lease is made not only on the credit of Lessee but also on the credit of the aforesaid vessels; and iii) Lessee grants and Lessor may assert maritime liens against such vessels for any breach of any Lease.

## 16.    Sovereign immunity

Lessee hereby waives any immunity from jurisdiction, pre-judgment seizure, arrest or attachment, and/or execution or enforcement of any judgment or award obtained by Lessor to which Lessee might otherwise be entitled, under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. Sections 1602-1611, or under any similar legislation, rules or regulations of any other country having application to Lessee in any action or proceeding brought by Lessor arising out of or related to any Lease or the Leased Equipment.

BT&C, Customer ID:    MERIDIAN
Effective Date:          15 July 2006

Initials:
Lessee:
Lessor:

# FLORENS MANAGEMENT SERVICES
# (MACAO COMMERCIAL OFFSHORE) LIMITED

(INCORPORATED IN MACAU)

17. **Assignment**

a)    Lessee may not assign or transfer any Lease without the Lessor's prior written consent. Lessor, in its sole discretion, may withhold consent. All Leases shall be binding upon Lessee and its successors and assigns.

b)    Lessor may assign or transfer in whole or in part any Lease and/or the payments due under that Lease. Lessee agrees to make all required payments to the assignee. Such assignment or transfer shall not relieve Lessee of any of its obligations under that Lease. In the case of any partial assignment or transfer, no assignee shall be required to join any other assignee in any legal proceeding relating to that Lease and such partial assignment or transfer shall be deemed to assign or transfer a divided, rather than an undivided, interest in the Lease.

18. **Miscellaneous**

a)    Pickup or redelivery of Leased Equipment or any other act by an agent or employee of, or independent contractor engaged by, Lessee shall be deemed to be the act of Lessee.

b)    Lessor is either the owner or sole and exclusive manager of the containers subject to this Agreement.  For containers which are owned by third party container owners and for which it acts as manager, Lessor warrants that the titled owners of those containers have given Lessor the right to lease those containers, as Lessor, to Lessee.

c)    The provisions of any Lease are separable.  If any provision is legally declared void, that provision shall be deemed severed from the applicable Lease and the remaining provisions shall continue in full force.

d)    Paragraph headings are for convenience only.

e)    All Leases may be executed in counterparts.

M/S MERIDIAN LOGISTICS

By: _D. John Raja bragh_

Title: _Managing Partner_

Date: _07 - 09 - 2006_

BT&C, Customer ID:    MERIDIAN
Effective Date:        15 July 2006

FLORENS MANAGEMENT SERVICES
(MACAO COMMERCIAL OFFSHORE)
LIMITED

By: _____

Title: _____VP_____

Date: _21 Nov 2006_

Initials:
Witness to the signature above Lessee:
of Zhang Biming in Macau.        Lessor:
Witness :
Yong Ka Wai

Report ID: AR3003PL
Aging Id:  FCGCO / ITMDY
Currency:  Base Currency
Rate Type:

PeopleSoft Receivables
Aging Detail by Customer
Item Date As of 09/23/2009

Page No. 1
Run Date 09/24/2009
Run Time 06:09:15

Meridian

| Item | Item Dt | Add Coll Mkt Ent | Typ | Typ/Rsn Terms Lease Ty | Cur | Amount | Current | 31-60 | 61-90 | 91-120 | 121-150 | 151+ |
|------|---------|------------------|-----|------------------------|-----|--------|---------|-------|-------|--------|---------|------|
| | | MERIDIAN | | | | | | | | | | |
| RFC0008142 | 07/13/2007 | 1 JKH KH | CSTIN | 030IN | USD | 453.45 | | | | | | 453.45 |
| RFC0008141 | 07/24/2007 | 1 JKH KH | AOFR | 030IN LE | USD | 555.73 | | | | | | 555.73 |
| RNT0008150 | 07/24/2007 | 1 JKH KH | CSTIN | 030IN | USD | 811.62 | | | | | | 811.62 |
| RNT0003262 | 09/30/2007 | 1 JKH KH | RNTIN | 030IN | USD | 2,536.20 | | | | | | 2,536.20 |
| RNT0003263 | 09/30/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,511.00 | | | | | | 2,511.00 |
| RNT0003864 | 10/31/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0003865 | 10/31/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,620.74 | | | | | | 2,620.74 |
| RFC0004475 | 11/30/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,511.00 | | | | | | 2,511.00 |
| RNT0004476 | 11/30/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,536.20 | | | | | | 2,536.20 |
| RFC0005099 | 12/31/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0005100 | 12/31/2007 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,620.74 | | | | | | 2,620.74 |
| RNT0005719 | 01/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,620.74 | | | | | | 2,620.74 |
| RNT0005720 | 01/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0006335 | 02/29/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,451.66 | | | | | | 2,451.66 |
| RNT0006336 | 02/29/2008 | 1 JKH KH | RNTIN | 030IN LE | USD | 2,427.30 | | | | | | 2,427.30 |
| DVC0001243 | 03/21/2008 | 1 JKH KH | LOSF / PHY | 030IN LE | USD | 1,632.00 | | | | | | 1,632.00 |
| DVC0001243 | 03/21/2008 | 1 JKH KH | LOSF / PHY | 030IN LF | USD | 2,427.36 | | | | | | 2,427.36 |
| RNT0006956 | 03/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,635.00 | | | | | | 2,635.00 |
| RNT0006957 | 03/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,620.74 | | | | | | 2,620.74 |
| DVC0001331 | 04/12/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| DVC0001331 | 04/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,116.50 | | | | | | 1,116.50 |
| RNT0007582 | 04/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,511.00 | | | | | | 2,511.00 |
| RNT0007583 | 04/30/2008 | 1 JKH KH | RNTIN | 030IN | USD | 2,536.20 | | | | | | 2,536.20 |
| RNT0008209 | 05/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0008210 | 05/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,620.74 | | | | | | 2,620.74 |
| RNT0008844 | 06/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0008845 | 06/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 7,382.78 | | | | | | 7,282.78 |
| RNT0009481 | 07/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0009482 | 07/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,656.58 | | | | | | 2,656.58 |
| ADJ0001495 | 08/31/2008 | 1 JKH KH | RNTDB | 030IN | USD | 35.00 | | | | | | 35.00 |
| RNT0010122 | 08/31/2008 | 1 JKH KH | RNTIN | 030IN | USD | 2,729.98 | | | | | | 2,729.98 |
| RNT0010123 | 08/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,619.96 | | | | | | 2,619.96 |
| RNT0010768 | 09/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,511.00 | | | | | | 2,511.00 |
| RNT0010769 | 09/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,594.70 | | | | | | 2,594.70 |
| RNT0011419 | 10/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,667.44 | | | | | | 2,667.44 |
| RNT0011420 | 10/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,956.72 | | | | | | 1,973.80 |
| RNT0012068 | 11/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,433.84 | | | | | | 2,433.84 |
| RNT0012069 | 11/30/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,488.44 | | | | | | 2,438.94 |
| RNT0012719 | 12/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,440.94 | | | | | | 2,440.94 |
| RNT0012720 | 12/31/2008 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,956.72 | | | | | | 1,956.72 |
| RNT0013361 | 01/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,298.68 | | | | | | 2,641.94 |
| RNT0013362 | 01/31/2009 | 1 JKH KH | RNTIN | 030IN LE | USD | 1,298.62 | | | | | | 1,493.60 |
| RNT0014003 | 02/28/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,767.36 | | | | | | 1,956.72 |
| RNT0014004 | 02/28/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,550.78 | | | | | | 1,956.72 |
| RNT0014623 | 03/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,624.72 | | | | | | 2,667.44 |
| RNT0014624 | 03/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,847.00 | | | | | | 2,440.94 |
| RNT0015238 | 04/30/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,428.98 | | | | 2,428.98 | | 1,956.72 |
| RNT0015239 | 04/30/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,440.94 | | | | | | 2,238.94 |
| RNT0015853 | 05/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 153.98 | | | | 153.98 | | 2,550.78 |
| RNT0015854 | 05/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,877.48 | | | | 1,877.48 | 1,877.48 | 1,767.36 |
| RFC0006604 | 05/31/2009 | 1 JKH KH | CSTIN | 030IN | USD | 290.87 | | | | 290.87 | | 2,550.78 |
| RFC0006605 | 06/30/2009 | 1 JKH KH | RNTIN | 030IN LE | USD | 1,771.20 | | | | 1,771.20 | | 2,015.50 |
| RNT0016478 | 06/30/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 2,322.74 | | | | 2,322.74 | | |
| RNT0016479 | 06/30/2009 | 1 JKH KH | CSTIN | 030IN | USD | 564.64 | | | | 544.64 | | |
| RFC0006870 | 07/18/2009 | 1 JKH KH | CSTIN | 030IN | USD | 102.14 | | | | 102.14 | | |
| RFC0006871 | 07/18/2009 | 1 JKH KH | RNTIN | 030IN LE | USD | 2,558.86 | | | 2,558.86 | | | |
| RNT0017102 | 07/31/2009 | 1 JKH KH | RNTIN | 030IN LF | USD | 1,830.24 | | | 1,830.24 | | | |
| RNT0017103 | 07/31/2009 | | | | | | | | | | | |

Exhibit C

Report ID: AR3003PL
Aging Id: FCGCO / IPNDT
Currency: Base Currency
Rate Type:

PeopleSoft Receivables
AGING DETAIL BY CUSTOMER
Item Date As Of 09/23/2009

Page No. 2
Run Date 09/24/2009
Run Time 06:09:16

| Item | Item Dt | Add Coll | MrRkt | Ent | Typ/Rsn | Terms | Lease Ty | Cur | Amount | Current | 31-60 | 61-90 | 91-120 | 121-150 | 151+ |
|------|---------|----------|-------|-----|---------|-------|----------|-----|--------|---------|-------|-------|--------|---------|------|
| Meridian | | MERIDIAN | | | | | | | | | | | | | |
| RPV0017727 | 08/31/2009 | 1 JKM | RK | RNTIN | | 030IN LE | | USD | | 2,210.30 | | | | | |
| RPV0017728 | 08/31/2009 | 1 JKM | RK | RNTIN | | 030IN LC | | USD | | 1,830.24 | | | | | |
| RPC0007472 | 09/11/2009 | 1 JKM | RK | ADTH | | 030IN | | USD | | 26.55 | | | | | |
| RPC0007538 | 09/11/2009 | 1 JKM | RK | CSTIN | | 030IN | | USD | | 82.62 | | | | | |
| Total 1 Tuticorin 628002 | | | | India | | | | | | 127,434.70 | 4,149.71 | 4,389.10 | 5,185.57 | 4,306.46 | 105,132.14 |
| Total Meridian | | MERIDIAN | | | | | | | | 127,434.70 | 4,149.71 | 4,389.10 | 5,185.57 | 4,306.46 | 105,132.14 |
| GRAND TOTAL | | | | | | | | | | 127,434.70 | 4,149.71 | 4,389.10 | 5,185.57 | 4,271.72 | 105,132.14 |

DV and NBV for a Customer

Run Date:09/24/2009
Page No :1

Meridian                                    Values As Of  24-SEP-2009

| Equip Type | Container# | CONTRACT | LOT Date | Manuf Date | RV | DV |
|---|---|---|---|---|---|---|
| D20 | FBLU2025649 | LE-MERIDIAN-01 | 10/04/2006 | 06/17/1995 | 2,550 | 1,275 |
| | FBLU2026183 | LE-MERIDIAN-01 | 10/11/2006 | 06/17/1995 | 2,550 | 1,275 |
| | FBLU3002864 | LE-MERIDIAN-01 | 10/11/2006 | 07/05/1995 | 2,550 | 1,275 |
| | FBLU3009283 | LE-MERIDIAN-01 | 06/06/2006 | 08/14/1995 | 2,550 | 1,275 |
| | FBLU3024014 | LE-MERIDIAN-01 | 06/07/2006 | 10/30/1995 | 2,550 | 1,275 |
| | FBLU3046862 | LE-MERIDIAN-01 | 06/08/2006 | 06/19/1996 | 2,550 | 1,275 |
| | FBLU3049500 | LE-MERIDIAN-01 | 08/30/2006 | 06/19/1996 | 2,550 | 1,275 |
| | FBLU3052309 | LE-MERIDIAN-01 | 10/11/2006 | 06/19/1996 | 2,550 | 1,275 |
| | FBLU3056156 | LE-MERIDIAN-01 | 10/11/2006 | 08/14/1996 | 2,550 | 1,275 |
| | FBLU3064444 | LE-MERIDIAN-01 | 07/12/2006 | 03/28/1996 | 2,550 | 1,275 |
| | FBLU3074946 | LE-MERIDIAN-01 | 08/30/2006 | 03/01/1996 | 2,550 | 1,275 |
| | FBLU3080213 | LE-MERIDIAN-01 | 10/19/2006 | 03/01/1996 | 2,550 | 1,275 |
| | FBLU3082751 | LE-MERIDIAN-01 | 08/30/2006 | 03/02/1997 | 2,550 | 1,275 |
| | FBLU3098763 | LE-MERIDIAN-01 | 10/06/2006 | 02/15/1997 | 2,550 | 1,275 |
| | FBLU3101430 | LE-MERIDIAN-01 | 12/13/2006 | 02/15/1997 | 2,550 | 1,275 |
| | FBLU3105306 | LE-MERIDIAN-01 | 06/17/2006 | 03/13/1997 | 2,550 | 1,275 |
| | FBLU3112666 | LE-MERIDIAN-01 | 08/30/2006 | 04/01/1997 | 2,550 | 1,275 |
| | FBLU3113960 | LE-MERIDIAN-01 | 10/11/2006 | 04/07/1997 | 2,550 | 1,275 |
| | FCIU2084593 | LE-MERIDIAN-01 | 06/03/2006 | 03/14/2005 | 2,550 | 1,849 |
| | FCIU2085970 | LE-MERIDIAN-01 | 06/17/2006 | 03/14/2005 | 2,550 | 1,849 |
| | FCIU2085985 | LE-MERIDIAN-01 | 08/30/2006 | 03/14/2005 | 2,550 | 1,849 |
| | FCIU2087519 | LE-MERIDIAN-01 | 06/08/2006 | 03/14/2005 | 2,550 | 1,849 |
| | FCIU2091890 | LE-MERIDIAN-01 | 06/26/2006 | 01/28/2005 | 2,550 | 1,823 |
| | FCIU2137380 | LE-MERIDIAN-01 | 06/06/2006 | 03/19/2005 | 2,550 | 1,849 |
| | FCIU2143968 | LE-MERIDIAN-01 | 06/06/2006 | 02/26/2005 | 2,550 | 1,836 |
| | FCIU2147238 | LE-MERIDIAN-01 | 12/15/2006 | 02/26/2005 | 2,550 | 1,836 |
| | FCIU2150442 | LE-MERIDIAN-01 | 10/11/2006 | 03/17/2005 | 2,550 | 1,849 |
| | FCIU2166840 | LE-MERIDIAN-01 | 10/11/2006 | 03/09/2005 | 2,550 | 1,849 |
| | FCIU2181736 | LE-MERIDIAN-01 | 06/05/2006 | 03/09/2005 | 2,550 | 1,849 |
| | FCIU2182990 | LE-MERIDIAN-01 | 06/01/2006 | 03/09/2005 | 2,550 | 1,849 |
| | FCIU2203028 | LE-MERIDIAN-01 | 06/08/2006 | 06/20/2005 | 2,550 | 1,887 |
| | FCIU2204488 | LE-MERIDIAN-01 | 06/08/2006 | 06/20/2005 | 2,550 | 1,887 |
| | FCIU2207949 | LE-MERIDIAN-01 | 06/01/2006 | 06/20/2005 | 2,550 | 1,887 |
| | FCIU2230764 | LE-MERIDIAN-01 | 06/22/2006 | 04/15/2005 | 2,550 | 1,862 |
| | FCIU2283912 | LE-MERIDIAN-01 | 10/11/2006 | 04/30/2005 | 2,550 | 1,862 |
| | FCIU2299565 | LE-MERIDIAN-01 | 10/11/2006 | 05/28/2005 | 2,550 | 1,874 |
| | FCIU2308250 | LE-MERIDIAN-01 | 06/07/2006 | 04/26/2005 | 2,550 | 1,862 |
| | FCIU2309961 | LE-MERIDIAN-01 | 10/11/2006 | 04/26/2005 | 2,550 | 1,862 |
| | FCIU2310983 | LE-MERIDIAN-01 | 06/07/2006 | 05/04/2005 | 2,550 | 1,874 |
| | FCIU2376975 | LE-MERIDIAN-01 | 10/10/2006 | 07/07/2005 | 2,550 | 1,900 |
| | FCIU2383830 | LE-MERIDIAN-01 | 10/11/2006 | 07/07/2005 | 2,550 | 1,900 |

**Exhibit D**

DV and NBV for a Customer

Meridian                          Values As Of  24-SEP-2009

| Equip Type | Container# | CONTRACT | LOT Date | Manuf Date | RV | DV |
|---|---|---|---|---|---|---|
| D20 | FCIU2389864 | LE-MERIDIAN-01 | 07/21/2006 | 07/07/2005 | 2,550 | 1,900 |
| | FCIU2404043 | LE-MERIDIAN-01 | 06/06/2006 | 07/05/2005 | 2,550 | 1,900 |
| | FCIU2404594 | LE-MERIDIAN-01 | 06/07/2006 | 07/05/2005 | 2,550 | 1,900 |
| | FCIU2406914 | LE-MERIDIAN-01 | 06/07/2006 | 07/05/2005 | 2,550 | 1,900 |
| | FCIU2410473 | LE-MERIDIAN-01 | 10/10/2006 | 09/05/2005 | 2,550 | 1,925 |
| | FCIU2673248 | LE-MERIDIAN-01 | 03/03/2007 | 09/03/2006 | 2,550 | 2,078 |
| | FCIU2680777 | LE-MERIDIAN-01 | 02/15/2007 | 09/03/2006 | 2,550 | 2,078 |
| | FCIU2680951 | LE-MERIDIAN-01 | 03/03/2007 | 09/03/2006 | 2,550 | 2,078 |
| | FSCU3018717 | LE-MERIDIAN-01 | 06/26/2006 | 05/06/1997 | 2,550 | 1,275 |
| | FSCU3022790 | LE-MERIDIAN-01 | 08/30/2006 | 04/22/1997 | 2,550 | 1,275 |
| | FSCU3031088 | LE-MERIDIAN-01 | 10/11/2006 | 04/25/1997 | 2,550 | 1,275 |
| | FSCU3039812 | LE-MERIDIAN-01 | 08/30/2006 | 04/19/1997 | 2,550 | 1,275 |
| | FSCU3045796 | LE-MERIDIAN-01 | 08/07/2006 | 05/01/1997 | 2,550 | 1,275 |
| | FSCU3047628 | LE-MERIDIAN-01 | 10/06/2006 | 05/01/1997 | 2,550 | 1,275 |
| | FSCU3091929 | LE-MERIDIAN-01 | 06/06/2006 | 06/25/1997 | 2,550 | 1,275 |
| | FSCU3113822 | LE-MERIDIAN-01 | 10/04/2006 | 11/01/1997 | 2,550 | 1,275 |
| | FSCU3120708 | LE-MERIDIAN-01 | 08/30/2006 | 01/01/1998 | 2,550 | 1,275 |
| | FSCU3138292 | LE-MERIDIAN-01 | 08/30/2006 | 01/01/1998 | 2,550 | 1,275 |
| | FSCU3170946 | LE-MERIDIAN-01 | 09/07/2006 | 03/01/1999 | 2,550 | 1,275 |
| | FSCU3171599 | LE-MERIDIAN-01 | 10/04/2006 | 04/01/1999 | 2,550 | 1,275 |
| | FSCU3180013 | LE-MERIDIAN-01 | 06/17/2006 | 03/01/1999 | 2,550 | 1,275 |
| | FSCU3228950 | LE-MERIDIAN-01 | 10/11/2006 | 04/08/1999 | 2,550 | 1,275 |
| | FSCU3233366 | LE-MERIDIAN-01 | 10/04/2006 | 04/01/1999 | 2,550 | 1,275 |
| | FSCU3241382 | LE-MERIDIAN-01 | 12/15/2006 | 05/22/1999 | 2,550 | 1,275 |
| | FSCU3241593 | LE-MERIDIAN-01 | 09/07/2006 | 05/22/1999 | 2,550 | 1,275 |
| | FSCU3258298 | LE-MERIDIAN-01 | 10/10/2006 | 04/21/2000 | 2,550 | 1,275 |
| | FSCU3264330 | LE-MERIDIAN-01 | 09/05/2006 | 01/17/2000 | 2,550 | 1,275 |
| | FSCU3281560 | LE-MERIDIAN-01 | 10/10/2006 | 04/01/2000 | 2,550 | 1,275 |
| | FSCU3295563 | LE-MERIDIAN-01 | 11/10/2006 | 06/25/2000 | 2,550 | 1,275 |
| | FSCU3299609 | LE-MERIDIAN-01 | 11/09/2006 | 05/19/2000 | 2,550 | 1,275 |
| | FSCU3302338 | LE-MERIDIAN-01 | 10/11/2006 | 05/23/2000 | 2,550 | 1,275 |
| | FSCU3311010 | LE-MERIDIAN-01 | 07/21/2006 | 06/12/2000 | 2,550 | 1,275 |
| | FSCU3321636 | LE-MERIDIAN-01 | 08/10/2006 | 08/08/2000 | 2,550 | 1,275 |
| | FSCU3328142 | LE-MERIDIAN-01 | 07/21/2006 | 07/11/2000 | 2,550 | 1,275 |
| | FSCU3330957 | LE-MERIDIAN-01 | 10/06/2006 | 08/11/2000 | 2,550 | 1,275 |
| | FSCU3353320 | LE-MERIDIAN-01 | 10/06/2006 | 10/27/2000 | 2,550 | 1,275 |
| | FSCU3366435 | LE-MERIDIAN-01 | 10/19/2006 | 02/25/2001 | 2,550 | 1,275 |
| | FSCU3374826 | LE-MERIDIAN-01 | 06/08/2006 | 02/28/2001 | 2,550 | 1,275 |
| | FSCU3391778 | LE-MERIDIAN-01 | 09/09/2006 | 03/11/2001 | 2,550 | 1,275 |
| | FSCU3393750 | LE-MERIDIAN-01 | 10/11/2006 | 03/11/2001 | 2,550 | 1,275 |
| | FSCU3414488 | LE-MERIDIAN-01 | 11/09/2006 | 04/02/2001 | 2,550 | 1,275 |

DV and NBV for a Customer

Run Date:09/24/2009
Page No :3

Meridian                           Values As Of 24-SEP-2009

| Equip Type | Container# | CONTRACT | LOT Date | Manuf Date | RV | DV |
|---|---|---|---|---|---|---|
| D20 | FSCU3474152 | LE-MERIDIAN-01 | 10/07/2006 | 04/16/2001 | 2,550 | 1,275 |
| | FSCU3475930 | LE-MERIDIAN-01 | 08/07/2006 | 04/20/2001 | 2,550 | 1,275 |
| | FSCU3513900 | LE-MERIDIAN-01 | 09/07/2006 | 05/06/2001 | 2,550 | 1,275 |
| | FSCU3538961 | LE-MERIDIAN-01 | 06/22/2006 | 12/21/2001 | 2,550 | 1,352 |
| | FSCU3564322 | LE-MERIDIAN-01 | 10/06/2006 | 01/29/2002 | 2,550 | 1,364 |
| | FSCU3571229 | LE-MERIDIAN-01 | 10/11/2006 | 02/08/2002 | 2,550 | 1,377 |
| | FSCU3587380 | LE-MERIDIAN-01 | 10/06/2006 | 03/04/2002 | 2,550 | 1,390 |
| | FSCU3612375 | LE-MERIDIAN-01 | 12/15/2006 | 03/21/2002 | 2,550 | 1,390 |
| | FSCU3616046 | LE-MERIDIAN-01 | 10/11/2006 | 03/21/2002 | 2,550 | 1,390 |
| | FSCU3630785 | LE-MERIDIAN-01 | 08/07/2006 | 03/21/2002 | 2,550 | 1,390 |
| | FSCU3636119 | LE-MERIDIAN-01 | 06/22/2006 | 03/23/2002 | 2,550 | 1,390 |
| | FSCU3638282 | LE-MERIDIAN-01 | 12/15/2006 | 03/23/2002 | 2,550 | 1,390 |
| | FSCU3642277 | LE-MERIDIAN-01 | 05/30/2006 | 03/23/2002 | 2,550 | 1,390 |
| | FSCU3646483 | LE-MERIDIAN-01 | 09/07/2006 | 04/09/2002 | 2,550 | 1,403 |
| | FSCU3722290 | LE-MERIDIAN-01 | 08/07/2006 | 04/14/2002 | 2,550 | 1,403 |
| | FSCU3722979 | LE-MERIDIAN-01 | 10/06/2006 | 04/14/2002 | 2,550 | 1,403 |
| | FSCU3723260 | LE-MERIDIAN-01 | 10/10/2006 | 04/14/2002 | 2,550 | 1,403 |
| | FSCU3730819 | LE-MERIDIAN-01 | 06/07/2006 | 04/19/2002 | 2,550 | 1,403 |
| | FSCU3821396 | LE-MERIDIAN-01 | 06/17/2006 | 05/19/2002 | 2,550 | 1,415 |
| | FSCU3821858 | LE-MERIDIAN-01 | 07/11/2006 | 05/19/2002 | 2,550 | 1,415 |
| | FSCU3822767 | LE-MERIDIAN-01 | 10/11/2006 | 05/19/2002 | 2,550 | 1,415 |
| | FSCU3829782 | LE-MERIDIAN-01 | 08/07/2006 | 05/07/2002 | 2,550 | 1,415 |
| | FSCU3834449 | LE-MERIDIAN-01 | 10/11/2006 | 05/28/2002 | 2,550 | 1,415 |
| | FSCU3834990 | LE-MERIDIAN-01 | 10/04/2006 | 05/28/2002 | 2,550 | 1,415 |
| | FSCU3866940 | LE-MERIDIAN-01 | 10/19/2006 | 08/16/2002 | 2,550 | 1,454 |
| | FSCU3878658 | LE-MERIDIAN-01 | 06/14/2006 | 07/27/2002 | 2,550 | 1,441 |
| | FSCU3929502 | LE-MERIDIAN-01 | 10/10/2006 | 12/13/2002 | 2,550 | 1,505 |
| | FSCU3938248 | LE-MERIDIAN-01 | 10/18/2006 | 12/03/2002 | 2,550 | 1,505 |
| | FSCU7307889 | LE-MERIDIAN-01 | 12/15/2006 | 02/16/2003 | 2,550 | 1,530 |
| | FSCU7351855 | LE-MERIDIAN-01 | 01/09/2007 | 02/23/2003 | 2,550 | 1,530 |
| | FSCU7851871 | LE-MERIDIAN-01 | 10/04/2006 | 07/09/2004 | 2,550 | 1,747 |
| | FSCU7943089 | LE-MERIDIAN-01 | 10/11/2006 | 08/09/2004 | 2,550 | 1,760 |
| | FSCU7945693 | LE-MERIDIAN-01 | 10/11/2006 | 08/09/2004 | 2,550 | 1,760 |
| Total | 115 | | | | 293,250 | 170,952 |
| D40 | FSCU4178010 | LT-MERIDIAN-01 | 09/02/2006 | 04/03/2000 | 4,100 | 2,050 |
| | FSCU4209430 | LT-MERIDIAN-01 | 08/23/2006 | 02/16/2001 | 4,100 | 2,050 |
| Total | 2 | | | | 8,200 | 4,100 |
| D4H | FSCU6004790 | LT-MERIDIAN-01 | 09/14/2006 | 03/31/1997 | 4,250 | 2,125 |

DV and NBV for a Customer

Run Date:09/24/2009
Page No :4

Meridian                                    Values As Of  24-SEP-2009

| Equip Type | Container# | CONTRACT | LOT Date | Manuf Date | RV | DV |
|---|---|---|---|---|---|---|
| D4H | FSCU6074118 | LT-MERIDIAN-01 | 09/05/2006 | 12/12/1997 | 4,250 | 2,125 |
| | FSCU6098470 | LT-MERIDIAN-01 | 12/14/2006 | 03/07/1999 | 4,250 | 2,125 |
| | FSCU6143311 | LT-MERIDIAN-01 | 09/14/2006 | 04/06/1999 | 4,250 | 2,125 |
| | FSCU6151385 | LT-MERIDIAN-01 | 10/05/2006 | 05/01/1999 | 4,250 | 2,125 |
| | FSCU6156303 | LT-MERIDIAN-01 | 12/19/2006 | 05/10/1999 | 4,250 | 2,125 |
| | FSCU6161130 | LT-MERIDIAN-01 | 09/05/2006 | 06/21/1999 | 4,250 | 2,125 |
| | FSCU6184434 | LT-MERIDIAN-01 | 09/05/2006 | 09/02/1999 | 4,250 | 2,125 |
| | FSCU6186503 | LT-MERIDIAN-01 | 08/26/2006 | 09/02/1999 | 4,250 | 2,125 |
| | FSCU6199326 | LT-MERIDIAN-01 | 08/24/2006 | 01/25/2000 | 4,250 | 2,125 |
| | FSCU6200350 | LT-MERIDIAN-01 | 11/21/2006 | 01/25/2000 | 4,250 | 2,125 |
| | FSCU6201320 | LT-MERIDIAN-01 | 10/19/2006 | 01/16/2000 | 4,250 | 2,125 |
| | FSCU6202625 | LT-MERIDIAN-01 | 08/24/2006 | 04/02/2000 | 4,250 | 2,125 |
| | FSCU6221590 | LT-MERIDIAN-01 | 12/15/2006 | 05/29/2000 | 4,250 | 2,125 |
| | FSCU6230735 | LT-MERIDIAN-01 | 08/28/2006 | 04/20/2000 | 4,250 | 2,125 |
| | FSCU6241940 | LT-MERIDIAN-01 | 08/26/2006 | 08/13/2000 | 4,250 | 2,125 |
| | FSCU6279756 | LT-MERIDIAN-01 | 01/01/2007 | 07/17/2000 | 4,250 | 2,125 |
| | FSCU6304910 | LT-MERIDIAN-01 | 11/21/2006 | 01/02/2001 | 4,250 | 2,125 |
| | FSCU6351130 | LT-MERIDIAN-01 | 01/01/2007 | 02/14/2001 | 4,250 | 2,125 |
| | FSCU6376798 | LT-MERIDIAN-01 | 10/04/2006 | 02/13/2001 | 4,250 | 2,125 |
| | FSCU6377325 | LT-MERIDIAN-01 | 09/05/2006 | 02/13/2001 | 4,250 | 2,125 |
| | FSCU6390292 | LT-MERIDIAN-01 | 10/02/2006 | 03/02/2001 | 4,250 | 2,125 |
| | FSCU6436053 | LT-MERIDIAN-01 | 08/28/2006 | 12/23/2001 | 4,250 | 2,253 |
| | FSCU6478932 | LT-MERIDIAN-01 | 01/17/2007 | 05/16/2002 | 4,250 | 2,359 |
| | FSCU6480734 | LT-MERIDIAN-01 | 01/17/2007 | 04/11/2002 | 4,250 | 2,338 |
| | FSCU6513118 | LT-MERIDIAN-01 | 08/21/2006 | 04/17/2002 | 4,250 | 2,338 |
| | FSCU6516101 | LT-MERIDIAN-01 | 09/05/2006 | 04/23/2002 | 4,250 | 2,338 |
| | FSCU6537830 | LT-MERIDIAN-01 | 09/05/2006 | 05/06/2002 | 4,250 | 2,359 |
| | FSCU6560700 | LT-MERIDIAN-01 | 08/25/2006 | 05/07/2002 | 4,250 | 2,359 |
| | FSCU6570340 | LT-MERIDIAN-01 | 09/05/2006 | 06/13/2002 | 4,250 | 2,380 |
| | FSCU6573631 | LT-MERIDIAN-01 | 10/04/2006 | 06/13/2002 | 4,250 | 2,380 |
| | FSCU6582525 | LT-MERIDIAN-01 | 01/01/2007 | 06/21/2002 | 4,250 | 2,380 |
| | FSCU6594927 | LT-MERIDIAN-01 | 12/05/2006 | 07/03/2002 | 4,250 | 2,401 |
| | FSCU6651230 | LT-MERIDIAN-01 | 10/19/2006 | 10/03/2002 | 4,250 | 2,465 |
| | FSCU6687254 | LT-MERIDIAN-01 | 08/23/2006 | 12/12/2002 | 4,250 | 2,508 |
| | FSCU6697329 | LT-MERIDIAN-01 | 10/05/2006 | 01/07/2003 | 4,250 | 2,529 |
| | FSCU6697606 | LT-MERIDIAN-01 | 11/21/2006 | 01/07/2003 | 4,250 | 2,529 |
| | FSCU6697838 | LT-MERIDIAN-01 | 08/17/2006 | 01/07/2003 | 4,250 | 2,529 |
| | FSCU6709651 | LT-MERIDIAN-01 | 10/04/2006 | 01/23/2003 | 4,250 | 2,529 |
| | FSCU6711638 | LT-MERIDIAN-01 | 12/08/2006 | 01/23/2003 | 4,250 | 2,529 |
| | FSCU6754964 | LT-MERIDIAN-01 | 10/04/2006 | 03/11/2003 | 4,250 | 2,571 |
| | FSCU6761238 | LT-MERIDIAN-01 | 01/01/2007 | 07/04/2003 | 4,250 | 2,656 |

DV and NBV for a Customer

Run Date:09/24/2009
Page No :5

Meridian                           Values As Of 24-SEP-2009

| Equip Type | Container# | CONTRACT | LOT Date | Manuf Date | RV | DV |
|---|---|---|---|---|---|---|
| D4H | FSCU6778821 | LT-MERIDIAN-01 | 12/05/2006 | 03/06/2003 | 4,250 | 2,571 |
| | FSCU6900821 | LT-MERIDIAN-01 | 12/14/2006 | 08/07/2003 | 4,250 | 2,678 |
| | FSCU9502890 | LT-MERIDIAN-01 | 08/20/2006 | 02/27/2005 | 4,250 | 3,060 |
| | FSCU9514798 | LT-MERIDIAN-01 | 08/24/2006 | 03/09/2005 | 4,250 | 3,081 |
| | FSCU9530206 | LT-MERIDIAN-01 | 08/25/2006 | 03/03/2005 | 4,250 | 3,081 |
| | FSCU9531115 | LT-MERIDIAN-01 | 12/14/2006 | 03/03/2005 | 4,250 | 3,081 |
| | FSCU9531579 | LT-MERIDIAN-01 | 08/28/2006 | 03/03/2005 | 4,250 | 3,081 |
| | FSCU9532831 | LT-MERIDIAN-01 | 08/25/2006 | 03/03/2005 | 4,250 | 3,081 |
| | FSCU9534536 | LT-MERIDIAN-01 | 12/19/2006 | 03/03/2005 | 4,250 | 3,081 |
| | FSCU9536668 | LT-MERIDIAN-01 | 12/19/2006 | 01/27/2005 | 4,250 | 3,039 |
| | FSCU9567000 | LT-MERIDIAN-01 | 10/19/2006 | 05/31/2005 | 4,250 | 3,124 |
| | FSCU9573717 | LT-MERIDIAN-01 | 08/17/2006 | 05/31/2005 | 4,250 | 3,124 |
| | FSCU9855557 | LT-MERIDIAN-01 | 03/16/2007 | 08/03/2006 | 4,250 | 3,443 |
| | TPCU8911192 | LT-MERIDIAN-01 | 10/19/2006 | 05/10/2001 | 4,250 | 2,125 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Total | 56 | | | | 238,000 | 137,126 |
| GRAND TOTAL | 173 | | | | 539,450 | 312,178 |

## VERIFICATION

STATE OF NEW YORK     )
                              )    ss.:
COUNTY OF NEW YORK   )

George N. Proios being duly sworn, deposes and says:

1.     I am a member of the bar of this Honorable Court and of the Law Offices of

George N. Proios, PLLC, attorneys for Plaintiff.

2.     I have read the foregoing Complaint and I believe the contents thereof are true.

3.     The reason this Verification is made by deponent and not by Plaintiff is that

Plaintiff is foreign corporation, no officers or directors of which are within this jurisdiction.

4.     The sources of my information and belief are documents provided to me and

statements made to me by representatives of Plaintiff.

_____
George N. Proios

Sworn to before me this
2nd day of October, 2009

_____
Notary Public

**JON WERNER**
NOTARY PUBLIC
02WE6149122
STATE OF NEW YORK
COMMISSION EXPIRES
JULY 3RD, 20_10_

-6-